IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VIRGINIA GRAFTON,

    Petitioner,                  No. CIV S-05-1659 LKK GGH P

    vs.

DEBRA JACQUEZ, et al.,

    Respondents.            FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1980 petitioner was convicted of conspiracy to commit murder (Cal. Penal Code §§ 182, 187), conspiracy to commit arson (Cal. Penal Code §§ 182, 447(a)), two counts of conspiracy to prevent or dissuade a witness from testifying (Cal. Penal Code §§ 182, 136b), and dissuading or preventing a witness from testifying (Cal. Penal Code § 136b). Answer, Exhibit A. Petitioner admitted three prior felony convictions. Id. Petitioner was sentenced to 25 years to life and a two year determinate term. Id.

        Petitioner challenges the 2004 decision by the California Board of Parole Hearings (BPH) finding her unsuitable for parole. This was petitioner's second parole suitability hearing. See Traverse, p. 21: 8-9.

/////

The petition contains six claims. Claim one alleges that no evidence existed to support the panel's decision that petitioner posed an unreasonable risk to society or a threat to public safety. Claim two alleges that the specific grounds on which the panel relied to find petitioner unsuitable were supported by no evidence. Claim three alleges that the panel's failure to consider that petitioner's commitment offense was not particularly egregious compared to other conspiracies to murder violated due process. Claim four alleges that the panel's failure to articulate a nexus between any of its findings for its decision and the risk of danger to the public by petitioner's parole violated due process. Claim five alleges that the denial of parole based on unchanging factors violates due process because it converted petitioner's sentence to life without the possibility of parole. Claim six alleges that the decision to set petitioner's next suitability hearing in two years rather than one violates due process.

Although petitioner characterizes the first five claims as raising different claims, they all challenge the sufficiency of the evidence to find petitioner unsuitable for parole. Accordingly, they will be addressed in the same section below.

After carefully reviewing the record, the court recommends that the petition be denied.

II.  <u>Anti-Terrorism and Effective Death Penalty Act</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion

for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional

principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The Superior Court of San Bernardino County issued a reasoned opinion denying petitioner's habeas petition.  Answer, Exhibit H.  The California Court of Appeal and California Supreme Court summarily denied petitioner's state habeas petitions.  Answer, Exhibits I, J.  Accordingly, the court considers whether the Superior Court's denial of petitioner's claims was an unreasonable application of clearly established Supreme Court authority.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

III.  Factual Background

On May 14, 1977, petitioner and Jean Tate tried to murder Jess Tate, the husband of Jean Tate.  Answer, Exhibit B.  Petitioner shot Jess Tate in a bar parking lot.  Id.  Petitioner first shot Jess Tate in the back, causing him to fall to the ground.  Id.  Petitioner then walked over to him, straddled him, and fired a second shot into his neck.  Id.  Petitioner and Jean Tate got into a car and left, but Jess Tate survived.  Id.

In September 1977, petitioner was convicted of assault by means of force likely to produce great bodily injury and possession of a firearm by an ex-felon.  Id.  In March 1979 that conviction was reversed; however, charges were refiled.  Id.  Petitioner later plead guilty to assault by means of force likely to possess great bodily harm and possession of a firearm by an

ex-felon.  Id.

The events that led to petitioner's conviction for conspiracy to commit murder occurred before petitioner's second conviction for the charges described above.  When charges were re-filed, petitioner learned that Jean Tate would be testifying against her at the re-trial.  Id. Petitioner then conspired with Gerald Weston to have Jean and Jess Tate murdered in order to prevent them from testifying.  Id.  The planning included written death threats sent to the Tates, conversations between petitioner and Weston while petitioner was awaiting retrial, and discussions involving escapes from the courtroom.  Id., Exhibit E.  In January 1979, Weston's apartment was searched, and homemade Napalm was found, along with manuals on bomb construction.  Id., Exhibit E.

IV.  Discussion

    A.  Insufficient Evidence

Since the approximate five years since the issuance of McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), we know this about the liberty interest implicated by California's parole laws regarding indeterminate sentences, i.e., parole suitability hearings, which if successful for the petitioner, will result in the establishment of an actual parole date (but never less than the minimum term):

1. A liberty interest exists, Irons v. Carey, No. 05-15275, 2007 WL 2027359 (9th Cir. July 13, 2007) citing cases;

2. Reliance on unchanging factors in denying parole suitability *might* implicate a violation of that liberty interest.  Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003);

3. A finding by the Board of Parole Hearings (formerly BPT) (or at a later time, by the Governor) concerning the circumstances or gravity of the crime in and of itself is sufficient to deny suitability; In re Rosenkrantz, 29 Cal. 4th 616, 682, 128 Cal. Rptr. 2d 104, 161; Irons, at * 5; but the nature of the offense must be "particularly egregious" to constitute a basis to deny parole suitability.  Rosenkrantz, 29 Cal. 4th at 683, 128 Cal. Rptr. 2d at 161.

       4. However, "particularly egregious" means nothing more than finding elements in excess of those "minimally necessary to convict." In re Dannenberg, 34 Cal. 4th 1061, 1095, 23 Cal. Rptr. 3d 417, 440 (2005);

       5. If the petitioner has served less than the minimum term of his indeterminate sentence, "all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." Irons at * 6, but see footnote 1 of Irons expressing no opinion if the prisoner has served more than his minimum term, i.e., *maybe* that is the time frame against which reliance on unchanging factors is truly suspect[1];

       6. If the BPH determined that the crime was vicious, or performed in a callous manner, or the motive was trivial, and so forth – all factors relating to the circumstances of the crime – and such is adopted by the state courts on review, a federal court must find the state court decision(s) AEDPA-unreasonable before a writ of habeas corpus may be granted. Irons, supra.

       With respect, after Irons, the undefined "mights" and "maybes" serve as an indecipherable present guide to knowing just when the liberty interest in parole may be violated by reliance on unchanging factors. Moreover, one does not know whether such reliance, if it is ever held to be insufficient, is based on passage of time alone, or is an uncertain blend of crime circumstances and passage of time. The state courts' adoption of the BPH (BPT[2]) or Governor's decision about the circumstances of the crime is now essentially unreviewable – at least prior to

---

[1] Nothing in California statutes or regulations, see Cal. Penal Code 3041, 15 CCR § 2402, would expressly so limit the decision of the BPH and Governor, thus the potential limitation must be of federal origin. However, as undue reliance on unchangeable factors has never been found thus far by the Ninth Circuit, the commencement point of the limitation, or the precise blend of crime circumstances and years since, has not been defined. We do know that in Irons, five times of application was insufficient. Irons did not decide that reliance on unchanging factors after the minimum term had been served was unlawful. We simply know that "maybe" that will be the case.

[2] The Board of Prison Terms recently had its name changed to the Board of Prison Hearings.

the expiration of the minimum term. That is, the circumstances of the crime in terms of viciousness, callousness, triviality and the like, is essentially an unchanging value judgment whose correctness cannot often be disputed regardless of the time when such a judgment is made – right after the conviction, just prior to expiration of a minimum term, well after the expiration of a minimum term. [3]

Review of the federal appellate cases demonstrates that no guided finding of undue reliance on unchanging factors can be made in this case. Biggs v. Terhune, supra, the case that commenced the discussion on unchanging factors, involved the first degree bludgeoning murder of a witness facilitated, but not committed, by Biggs. He was denied parole eligibility at his initial hearing in 1999 in part because of the gravity of the crime. All might agree that such a murder was grave, and it will never be properly classified as anything but such. Nevertheless, the Ninth Circuit found that "continued reliance" on unchanging factors could violate due process. Although not stating such, the intimation of Biggs was that the third or fourth time of reliance on the circumstances of the crime would be too much. Certainly, it was not understood by the undersigned from reading Biggs that the time at which continued reliance would be too much would occur in 2010 – the time at which Biggs will have served his minimum term. Biggs' minimum term is served in 2010, and Biggs will have had approximately 5 or 6 more hearings by that time. However, subsequent Ninth Circuit cases have not upheld the undersigned's reading of Biggs.

---

[3] The undersigned has previously determined the arbitrary nature and lack of predictive value generally found in a circumstances of the crime parole suitability denial based on unchanging circumstances despite the passage of sixteen years and more from the date of the conviction coupled with an unblemished prison record. See Irons v. Warden of California State Prison-Solano, 358 F. Supp. 2d 936, 947 (E.D. Cal. 2005). That analysis, focusing on the predictive nature of the crime for future violence in combination with expert psychiatric reports or other forward looking evidence, has been cited with approval by the California Court of Appeal. In re Elkins, 144 Cal. App. 4th 475, 50 Cal. Rptr. 3d 503, 522 (2006); In re Scott, 133 Cal. App. 4th 573, 34 Cal. Rptr. 3d 905 (2005). However, since that analysis only received the comment that it was an "understandable [AEDPA] error" in the concurrence of Judge Reinhardt, that analysis concerning the trigger time of undue reliance will not be utilized herein.

In Sass, no comparison review of other cases was undertaken, there was simply the one sentence holding that the "evidence of Sass' prior offenses [prior DUIs] and the gravity of his convicted offenses [DUI resulting in a death and injury] constitute some evidence to support the Board's decision." Id., 461 F.3d 1123; the dissent disagreed, and found AEDPA unreasonableness. The Ninth Circuit was reviewing a third denial of suitability. If jurists of the Ninth Circuit cannot agree whether the circumstances of the crime can constitute some evidence given three hearings, how will the BPH or the undersigned know when to stop using the circumstances of a crime as the reason to deny parole eligibility. What will be the analytical watershed point of departure from routinely upholding the BPH assessment of the circumstances of the crime, and more importantly, why? Will the fourth hearing be sufficient, or should it be the seventh? Will the analysis simply hinge on the non-analytical fact that Sass will have passed his minimum terms of years under his sentence? Would a later BPT finding of egregiousness be AEDPA unreasonable simply because Sass just passed his minimum term as opposed to just before the expiration of his minimum term? None of these questions have been answered.

In Irons, after five parole suitability hearings, the Ninth Circuit determined that the second degree murder of a perceived thieving drug dealer by a wildly shooting, and then stabbing, angry "victim" of the deceased was comparatively more egregious than the murder in Sass. Perhaps so; perhaps other jurists would locate this line in another position because of the societal impact that drunk drivers impose in this country. Both positions have their points. But one can validly question whether the ultimate goal of every parole eligibility hearing, determining *future* safety of the community, can forever be based on personal judgments on the comparative seriousness of crimes committed decades ago.

Nevertheless, taking an implied cue from Irons that the minimum term might serve as an analytical change point, the undersigned finds that prior to that time, absent extraordinary circumstances, the BPH determination on factors relating to the circumstances of the crime are essentially unreviewable, i.e., the determination constitutes "some evidence"

sufficient to deny parole eligibility (suitability).  In the instant case, at the time of the at-issue 2004 suitability hearing, petitioner had served 24 years.  Because she had not yet served the minimum term of 25 years, the BPH's reliance on factors relating to the crime constituted "some evidence" absent extraordinary circumstances.[4]

In petitioner's case, the BPH relied on two unchanging factors regarding the commitment offense to find petitioner unsuitable.  First, the BPH found that the offense demonstrated a "lack of regard for the life and suffering of other[s]."  Petition, exhibit A, p. 116.  See Cal. Code Regs. tit. 15, § 2402(c)(1)(D) (unsuitability demonstrated if offense carried out in a manner demonstrating exceptionally callous disregard for human suffering).  The BPH also found that motive for the offense was trivial.  Cal. Code Regs. tit. 15, § 2402(c)(1)(E).

In the discussion regarding petitioner's callous disregard for human suffering, the BPH focused on the facts in support of petitioner's conviction for assaulting Jess Tate:

> It gets rather complicated, but the inmate and her crime partner in the conspiracy were trying to put together a plan to murder Jess and Jean Tate.  Jean Tate and the inmate had been involved in an attempt to murder Jess Tate previous to this conspiracy.  And it was the intent of the conspiracy to eliminate the testimony of Jean and Jess Tate that put Ms. Grafton in prison, that attempt with Mr. Weston to eliminate their testimony by either murdering them or there was also, apparently discussion of escape, being from the courtroom during the trial.  And all of this was monitored.  Most of it was in conversations in the county jail that were

---

[4] Nearly the same day as Irons was decided, the Ninth Circuit reversed a grant of parole eligibility in Kunkler v. Muntz, 2007 WL 683970 (9th Cir. 2007).  The facts of the second degree murder were not set forth in the opinion, but the fact of Kunkler's 1983 conviction, and the fact that Kunkler had been considered for parole suitability *ten times* were set forth.  Kunkler had been imprisoned well beyond any minimum term.  On his last two BPT (now BPH) hearings, the commissioners had found Kunkler suitable for parole, but the Governor reversed both decisions in part on his perception of the seriousness of the crime.  Indeed, this was *the* ground on which the state courts in unpublished orders had ultimately upheld the Governor's decision.  The district court applied the Biggs dictum regarding reliance on unchanging factors.  In reversing the district court, the Ninth Circuit, citing Sass, viewed the Biggs dictum as merely advice to the *next BPH panel* that it might wish to depart from its continued reliance on a non-changing factor.  Kunkler at *2 ("'it is not [this court's] function to speculate about how future parole hearings could proceed.'").  Evidently, no matter how many times the BPH and/or the Governor utter an undoubtedly correct conclusion that a murder is serious, or a motive trivial, or that the victim suffered, these unchanging factors will always constitute "some evidence" in federal habeas corpus review.

|   |   |
|---|---|
| 1 | recorded. And this–the crimes, plural, absolutely shows a lack of regard for the life and suffering of other–others. The inmate said a number of times today that no one was killed, but it certainly wasn't for lack of trying. She shot Mr. Tate twice. After she shot him the first time, she went and shot him again in an attempt to make sure that he, in fact, was dead. She failed that attempt. She then tried, with Mr. Weston, to put together a plan to get rid of Mr. Tate again and add to that, Mrs. Tate, Jean Tate. Thankfully, none of those attempts were successful and the victims survived. But the crime–crimes were carried out in a very cruel fashion. |

Petition, exhibit A, pp. 115-116.

In order for the panel to find petitioner unsuitable based on § 2402(c)(1)(D), it had to find that the *offense*, i.e. petitioner's conviction for conspiracy to commit murder, was carried out in a manner demonstrating an exceptionally callous disregard for human suffering. Technically, the facts surrounding petitioner's conviction for assaulting Jess Tate were not directly relevant to the panel's consideration of this factor.

However, the totality of the circumstances related to the crime at issue should be considered. First, in California law, with one non-germane exception, the severity for punishment for conspiracy to commit murder is the same as for murder itself. Cal. Penal Code § 182(a). Clearly, California sentencing law treats the conspiracy as if the murder had been carried out as planned, and there is no reason why that equivalency should not stand in the parole suitability process as well. A killing by burning someone to death with napalm qualifies as lacking in regard to life and human suffering. Moreover, undoubtedly, evidence of the conspiracy included the previous actions of what a layperson might term attempted murder. These previous acts show the seriousness of petitioner's intent to terminate Jess Tate's existence no matter how it was carried out. This is not the case where the prosecution showed evidence of the conspiracy, but the willingness of the conspirator to actually have the crime carried out was muddled. The previous assault reveals the unequivocally, deadly intent of petitioner in the actual conspiracy at bar. Although the suitability regulations are written to take into account the actual murder, and were not conceived with conspiracies in mind, those regulations are not so wooden as to disqualify probative evidence of the seriousness of the intent to murder and how it was to be

carried out.  The intent required to carry out a crime, after all, is the most important element of any crime as it often distinguishes the various levels of severity of crime.

The panel stated that petitioner's conviction for conspiracy to commit murder demonstrated a callous disregard for human suffering, although it did not discuss the circumstances of this offense.  As discussed above, Napalm and manuals on bomb construction were found in Weston's apartment, indicating that petitioner and Weston conspired to bomb and burn the Tate's.  These facts were sufficient to support a finding of unsuitability pursuant to § 2402(c)(1)(D).

The panel also found petitioner unsuitable on grounds that her motive was trivial in relationship to the offense.  In <u>In re Scott</u>, 119 Cal. App. 4th 871, 15 Cal. Rptr. 3d 32 (2004), the California Court of Appeal discussed the standard for determining whether a motive is trivial:

> The offense committed by most prisoners serving life terms is, of course, murder. Given the high value our society places upon life, there is no motive for unlawfully taking the life of another human being that could not reasonably be deemed 'trivial.'  The Legislature has foreclosed that approach, however, by declaring that murderers with life sentences must 'normally' be given release dates when they approach their minimum eligible parole dates... The reference in Board regulations to motives that are 'very trivial in relationship to the offense' therefore requires comparisons; to fit the regulatory description, the motive must be materially less significant (or more 'trivial') than those which conventionally drive people to commit the offense in question, and therefore, more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented.

119 Cal. App. 4th at p. 893, 15 Cal. Rptr. 3d 32.

In the instant case, petitioner attempted to murder the Tates to prevent them from testifying against her at her trial for assault on Jess Tate.  This motive is inimical to the entire system of justice, and it is clearly not materially less significant than those reasons which conventionally drive people to commit murder – i.e., it wasn't trivial.

Although this court questions the finding that petitioner's motive was trivial, the panel's finding that the offense demonstrated a callous disregard for human suffering is clearly

\\\\\

\\\\\

supported by the facts of the offense.[5] Because circumstances of the crime alone can constitute some evidence, there is no point in discussing the other factors of parole suitability, and whether some evidence existed for the conclusions reached in the other factors by the BPT.[6]

Petitioner also argues that her indeterminable denial of parole based on static factors related to her conviction and events occurring prior to her conviction have effectively converted her sentence to life without any possibility of parole. As discussed above, based on Ninth Circuit authority, the 2004 decision finding her unsuitable based on factors related to her commitment offense was supported by some evidence. So long as a decision by the BPH finding petitioner unsuitable is supported by some evidence, this court cannot find that petitioner's sentence has been effectively commuted to life without the possibility of parole.

### B. Delay in Suitability Hearing

Petitioner argues that the 2004 panel violated her right to due process by setting off her subsequent parole hearing by an additional year, i.e. the panel scheduled it in two years rather than at the usual one year interval. In the traverse, petitioner states that she had a third suitability hearing in 2006 where she was again found unsuitable and scheduled for a fourth

---

[5] The panel also found petitioner unsuitable for parole based on her extensive criminal history, which occurred before her conviction for conspiracy to commit murder. Petition, exhibit A, p. 117. The panel also discussed petitioner's prison record, which included 24 rules violation convictions, the last one being in 1991. Id., p. 66. Petitioner spent 15 years in the security housing unit, being released in 1995. Id. The panel also discussed extremely favorable psychological evaluation of petitioner prepared in 2003. Petition, Exhibit B. In this report, Dr. Williams commented that petitioner's behavior had changed "so markedly that it is virtually without precedent." Id. Petitioner's risk of recidivism was "so low as to be negligible." Id. Dr. Williams stated that petitioner's level of remorse was very high and she did not find that petitioner required further therapy. Id. Disregarding Dr. Williams's conclusions, the 2004 panel determined that petitioner needed "continued participation in self-help, not only to further delve in to the causative factors of her participation in this life crime and develop an appropriate level of insight, which the Panel still believes she does not have." Petition, exhibit A, p. 119.

[6] Rosenkrantz also required that the then BPT also make an individualized consideration of the other factors regarding parole suitability. Of course, the Commissioners always make such a determination as the Commissioners know that they must. Whether these determinations are supported by some evidence is another matter, but as long as the consideration is made, the circumstances of the crime are sufficient to deny suitability.

suitability hearing in 2008.

Under California law, if the BPH finds an inmate unsuitable for parole, it must conduct subsequent parole consideration hearings annually. Cal. Penal Code § 3041.5(b)(2). One exception is if an inmate has been convicted of murder, the hearing may be deferred for "[u]p to five years" if the Board "finds that it is not reasonable to expect that parole would be granted at a hearing during th[ose] years..." Cal. Penal Code § 3041.5(b)(2)(B). The Board's decision to defer the annual hearing is guided by the same criteria used to determine parole suitability. Cal. Code Regs. tit. 15, § 2270(d).

"Thus, the reasons for refusing to set a parole date need not be completely different from the reasons for excepting an inmate's case from annual review." In re Burns, 136 Cal. App. 4th 1318, 1326, 40 Cal. Rptr. 3d 1 (2006). "'The latter decision involves a prediction that at least during the period of the postponement, an inmate will not likely become suitable for parole. That prediction may involve some of the same facts on which the unsuitability determination is based. What is required, however, is an identification of reasons which justify the postponement.'" Id. (quoting In re Jackson (1985) 39 Cal. 3d 464, 479, 216 Cal. Rptr. 760, 703, P.2d 100; cf. People v. Belmontes (1983) 34 Cal. 3d 335, 347, 193 Cal. Rptr. 882, 667 P.2d 686).

This court is aware of no authority supporting the proposition that petitioner is constitutionality entitled to parole suitability hearings at a rate any more frequent than that provided by California law. In addition, as stated above, the BPH may rely on the same factors finding a petitioner unsuitable for parole to justify the postponement of the next suitability hearing. In this case, the BPH's reliance on the same factors to support both decisions, complied with California law.[7] No due process violation occurred as a result of the postponement of

---

[7] Petitioner argues that the California Supreme Court in In re Jackson, 39 Cal. 3d 464 (1985) held that the BPH could not defer subsequent parole hearings for more than one year based on the same grounds used to deny parole. The California Supreme Court did not hold this in Jackson. In In re Burns, 136 Cal. App. 4th 1318, 1326 (2006), the California Court of Appeal

petitioner's suitability hearing for two years.

*Conclusion*

If the undersigned were reviewing this matter on a clean slate, the undersigned would not analyze the liberty interest involved merely by reference to a checklist of crime circumstances and whether the BPH understood that a murder was serious. Nevertheless, no binding authority at present would require more than use of the checklist for the circumstances of the crime factors as "some evidence" upon which to deny parole suitability.

For the reasons discussed above, the court finds that the denial of petitioner's claims by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/30/07               /s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

grafton.157

---

rejected this argument: "We thus reject Burns's principal contention that "[r]easons for deferring the next hearing must be different from those for denying parole." We also reject his subsidiary contention that the Board's regulations are invalid to the extent that they allow it to rely on the same reasons to deny parole and to defer the next hearing." 136 Cal. App. 4th at 1326 n. 3.